UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 12-80092-CR-MARRA/VITUNAC

UNITED STATES OF AMERICA

v.

NICKLAUS LARONE WOODARD,

Defendant.
_____/

PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to count 1 of the indictment, which count charges the defendant with possession of a controlled substance with intent to distribute to wit: less than 50 kilograms of marijuana in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).

2. This Office agrees to seek dismissal of counts 2, 3 and 4 of the indictment, as to this defendant, after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory

sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.  The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range.  Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to 5 years, followed by a term of supervised release of up to 3 years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up $250,000.00.

5. The defendant further understand and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant.  The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.  If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses

2

committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his/her plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

8. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the

Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.

9. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 9/7/12

By: _____
ROBERT H. WATERS, JR.
ASSISTANT UNITED STATES ATTORNEY

Date: 9/7/12

By: _____
ROBIN ROSEN-EVANS
ATTORNEY FOR DEFENDANT

Date: 9-7-12

By: _____
NICKLAUS LARONE WOODARD
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80092-CR-MARRA/VITUNAC

UNITED STATES OF AMERICA

v.

NICKLAUS LARONE WOODARD,

Defendant.
_____/

## FACTUAL PROFFER

### Statement of Facts

Had this matter proceeded to trial, the United States would prove the following facts beyond a reasonable doubt through admissible testimony and evidence:

On April 5, 2012, West Palm Beach Police Department Patrol made contact with Nicklaus WOODARD (hereinafter referred to as the "defendant") who was standing in front of 633 54th Street in West Palm Beach, Florida. The defendant was in possession of an alcoholic beverage. While speaking with officers, the defendant made the spontaneous utterance, "I have a pistol in my back pocket but I have papers for it". West Palm Beach Officers then removed the firearm for safety reasons. The defendant does not possess a concealed weapons permit. The firearm, a Glock model 27, .40 caliber semi-automatic pistol, Serial No. 4WPPD33G, was loaded with thirteen rounds of .40 caliber ammunition.

In addition, on April 10, 2012, a second Glock .40 caliber pistol was confiscated by police from the defendant, after he admitted to firing the weapon at another person allegedly in self defense.

Based on the April 5th encounter with the defendant, West Palm Beach Police Officers obtained an arrest warrant for the defendant for carrying a concealed firearm. On April 20, 2012,

West Palm Beach Police Officers and US Marshals arrested the defendant at his residence. Upon entering the residence, officers observed two clear plastic baggies containing what appeared to be marijuana on the coffee table. The residence was cleared and held while a search warrant was obtained.

ATF Task Force Officer Troy Raines then conducted a post-Miranda interview with the defendant. This interview was audio and video taped. The defendant stated that he recently obtained a firearm the previous night for $50 in Riviera Beach, since finding out his firearms and been taken by the Police Department. The defendant stated that the firearm, a revolver, was in the trunk of his vehicle at his residence. The defendant stated that he needed the firearm for protection, as he had recently been involved in a shooting. The defendant stated that he has been smoking marijuana since he was eighteen (18) years old, and that he is twenty-five (25) years old now. The defendant told TFO Raines that he smokes marijuana every day. TFO Raines asked the defendant how much marijuana he smokes a week, to which the defendant replied, "a lot".

West Palm Beach Police Officers obtained a search warrant for 633 54th Street in West Palm Beach, to include the defendant's vehicle, for what was seen in plain view during the defendant's arrest and what he said in his subsequent statement. Upon searching the residence, Officers recovered approximately 116 grams of marijuana, packaging material consisting of one inch by one inch plastic apple bags, three black digital scales, six (6) rounds of .38 caliber ammunition, four (4) rounds of .40 caliber ammunition and one round of .22 caliber ammunition. In addition, twenty-two (22) spent .40 caliber shell casings were recovered from the residence.

TFO Raines determined that the amount of marijuana recovered along with the packaging materials and the scales is indicative for the distribution of marijuana. Officers conducted a field

Page 2 of 4

test on the marijuana recovered from the residence which resulted in a positive reaction for THC.

Officers searched the defendant's vehicle, a 4 door Chevrolet, FL license plate number N34 5CU and recovered a Taurus .38 caliber revolver, Serial Number AU71642 loaded with five (5) rounds of Winchester .38 SPL ammunition from a spare tire located in the trunk. An NCIC check of this firearm reveals it was one of twelve firearms stolen from a federal firearms licensee in 2007. In addition, officers recovered seventeen (17) spent shell casings (ten (10) 9mm rounds and seven (7) .40 caliber rounds) from a jacket pocket that was in the defendant's trunk.

ATF Special Agent Alan Oxley has received extensive training in the manufacture and commerce of firearms, and has been admitted as an expert witness in the area of the interstate commerce nexus of firearms and ammunition on numerous prior occasions in the United States District Court for the Southern District of Florida, and elsewhere. Special Agent Oxley has advised that the Taurus revolver and the Winchester ammunition are all manufactured outside the State of

Florida, and that thus, by their subsequent presence and recovery in Florida, such, of necessity, had to have traveled in and affected interstate and/or foreign commerce.

WIFREDO A. FERRER<br>
UNITED STATES ATTORNEY

By: _____
ROBERT H. WATERS, JR.
ASSISTANT U.S. ATTORNEY

SEEN, AGREED AND APPROVED:

_____
NICKLAUS LARONE WOODARD
DEFENDANT

_____  9/5/12
ROBIN ROSEN-EVANS
ATTORNEY FOR DEFENDANT